Good morning, your honors. My name is Chris Baird for the petitioner Angel Pineda-Bonilla. I'd like to reserve two minutes for rebuttal. Angel's credible testimony and documentary evidence clearly establish that he is eligible for asylum unless the court has questions about how the lifetime of physical abuse that Angel endured while in Honduras rises to the level of persecution and abuse that included a vicious machete attack by his half-brother against him. Well, what is your best case that being a member of a dysfunctional family is grounds for political asylum? Your honor, our argument that the family qualifies for asylum here is based on Angel's membership in a particular social group that consists of him and his full siblings. There are several Ninth Circuit cases, including Jai Lin, which stand for the proposition that a family can qualify as a particular social group under the INA. And here, the IJ held that, you know, it appeared to believe that we were arguing a broader social group than we were, and that's not the case. Here, we consistently argued that the particular social group is Angel and his full siblings. Now, so Jai Lin is one case that stands for the proposition that a family can be a particular social group. One of the things that the BIA did here was apply a social visibility test. And we argue in our briefs that it was improper for the BIA to apply that test. This is not even a family. This is part of a family, right? Your honor, the way the, in matter of Acosta, when the BIA first laid out the contours of the particular social group prong. Let me start with an answer to my question. I'm sorry, yes, you're right. Isn't it correct that this is part of a family? That's correct. This is part of a family. Let's assume that with the panel were to accept your argument, this is a social group. What proof is there that the government of Honduras was unwilling or unable to control the bad guys, if you will? The proof here in the record is that Angel's chief persecutor, Germán Bonilla, had friends in the local police force. There was also documentary evidence discussing the corruption of the Honduran police force and also the government's, the local police force's unwillingness to investigate family violence. Wasn't one of the bad brothers arrested? He was arrested and the government points out in its brief and we pointed that out in our brief, your honor. There's a couple reasons that I don't believe that the arrest is significant. First of all, neither the IJ nor the BIA based its decision on Germán's arrest. So it would be inappropriate for this court to uphold the BIA or the IJ on that ground since it didn't address that and that's under the SEC versus Chenery doctrine. Second, the arrests, if anything, point in favor of Angel. Germán Bonilla was arrested on one occasion after he stabbed somebody in the leg with a knife. He spent only a week in jail. So that doesn't show that he wasn't friends with the local police force. If anything, it shows potentially that he was able to use his connections to get out of jail. But what's our standard of review, counsel? I mean, my colleague, in fact, suggested the questions I would have asked, but what's our standard of review? Isn't the standard substantial evidence? It is, your honor. And if, in fact, there is in this record evidence that nothing has ever been reported to the police and the articles show that the police are trying to do something about the problem and this half-sibling who did something bad, really the one he feared, had been arrested for other incidents, then under a substantial evidence standard, don't we have to support the BIA's determination? No, your honor. I mean, we don't have to say there's more evidence than not. All we have to find is substantial evidence in this record. That's correct. It is a substantial evidence standard. The reason substantial evidence does not support the IJ's conclusion is under this court's case law. There is no obligation to report abuse to the police if it would be dangerous or futile to do so. Second, because Angel testified credibly before the IJ, this court must take all the facts in his testimony plus reasonable inferences therefrom as true for the purposes of the appeal. And that's the Boer-Sedano case that stands for that proposition. That doesn't necessarily suggest that when they find him credible that he then can testify as to what the police will or will not do. He can testify and I can believe him as to his subjective belief, which I can give him a subjective belief, but then I have to say is there substantial evidence? No report. There are articles in the record show the police are trying to do something about this and the half-sibling, I guess of which he is the most scared, was arrested. The half-sibling was arrested, your honor, but the reason the fact here that makes this different from other cases is that there's a tangible and substantial connection between the persecutor and the local police force and that's the key difference. Because Herman Bonilla had friends in the local police force, it wouldn't have been reasonable for Angel to go to the police and seek assistance. If he had done so, there's a very good chance that either the police would have done nothing and the abuse would have continued or his friends in the police department would have told Herman Bonilla. That's certainly one way to look at the evidence, but the other way to look at the evidence is that we have no proof that this government would do, would refuse to try to or that they refuse to do so. I mean, we see immigration cases all the time, for example, from India where people do report it to police authorities and they do nothing about it or demand a bribe, but there's nothing in this record about that. That's correct, your honor, and you know, we stated below and it's been Angel's consistent story that he didn't, did not report the abuse to the police, but under the law of this court, if you don't report abuse, there's no obligation to report if it would have been dangerous or futile to report the abuse. And you know, I'll discuss the cases right now that stand for that proposition. This case, there's a continuum of cases, first of all. On the one hand, you have cases like Castro Perez, which is cited in our briefs, and in that case, a woman did not report a date rape to the police because of a general fear that she had that the police wouldn't investigate date rape. She had no personal circumstances, no tangible ties with law enforcement. On the other hand, you have cases where there is a tangible tie to law enforcement. There's a BIA case, Matter of S.A. that's cited in our briefs, and also the Ornelas Chavez case and Boer-Sedano case. And in those cases, there was no reporting of abuse to the police because of connections to the police. For example, in Matter of S.A., a young woman was abused by her father. She didn't go to the police. What she relied on was documentary evidence that the police wouldn't have investigated that sort of abuse in Morocco. It was actually the documentary evidence was that she probably would have been returned to her home, and that was country condition reports, things like that. And there was a vague assertion that her mother had attempted to report abuse of her mother in the past. So that, the BIA there held that that was a substantial enough connection that that gave S.A. a reasonable fear that reporting the abuse would have been dangerous or futile. Now, is there substantial evidence in this record to suggest that what happened here rises to the level of past persecution? There is, Your Honor. For example, the I.J. I mean, what really happened here, was there a beating? There were several beatings, and Angel has scars as a result, and the I.J. found that. And so, if then there's past persecution, then he gets a, if you will, a leg up when it's, when we're talking about future persecution. That's correct, Your Honor. And the standard of review... Was there any evidence here that a relocation for him would be unreasonable? He testified at several points in the record that he continued to fear his chief persecutor, and so there was that evidence that the relocation... That's the only evidence we have? Yes, there was other evidence in there about the economic difficulty, but that related to a claim that we're not asserting on this appeal. All right. And the standard of review for the persecution issue, when reviewing whether certain facts rise to the level of persecution, this Court's standard of review is de novo. But I see that I'm almost out of time, so I'll save a minute for rebuttal. Thank you. Good morning. My name is Catherine McKinney, and I represent the respondent in this matter. This Court should deny the petition for review of the denial of Mr. Pineda's request for asylum because the record does not compel the conclusion that the Honduran government was unable or unwilling to control Mr. Pineda's half-siblings. Because this finding is fatal to both his past persecution and future persecution claims, this Court should deny this petition on this basis alone. Is it the government's position that the petitioner's testimony that the local police were corrupt, that his brother had friends on the force, made it futile for him to report it, that that's not enough? The standard in this Court under Babala is that the Court does consider whether they've reported it, which of course he didn't. So he's trying to establish that he wasn't required to, and that the exception applied because it would have been futile or dangerous to do so. The evidence simply doesn't compel that. I'm sorry. My question is, is there something more required than the petitioner's testimony as to futility in a case where the petitioner has been deemed credible? The petitioner is credible, and he's testified that he believed it would have been dangerous or futile to do so, but he didn't report it to the authorities. He hasn't identified the friend in the police force. We don't know the nature of the relationship. We don't know who the individual is. We don't know what would have happened. He's testified that he believes it would have been futile because of this unidentified relationship. Was he asked about that? Was he questioned at the hearing about that? At the hearing, I believe he testified that it was his belief that the police were corrupt. That's not my question. My question is, was he cross-examined and asked, who are these people? Who are these friends? Do you have other proof? Was he asked about that? I do not believe that he was cross-examined on this. Again, it would be his burden to establish, convincingly establish. I understand that, but that's no reason in an ordinary case why a government lawyer should just sit there and not cross-examine. But the answer is there was no cross-examination on that point, correct? I do not believe so. But again, the point wasn't sufficient to establish his burden. So the point was simply that he believed that. And of course, the government cited cases in the brief. I believe it's Cahill that just because a petitioner testifies as to their subjective beliefs as to what might happen in the future were they to pursue a course of action, that doesn't mean that the adjudicator, in this case, the agency, the immigration judge, was required to There was a little bit more. There was this incident where this bad brother knifed someone and for that assault, he was given a week in jail and released. Does that add to the mix? It doesn't in any way meet their burden on review of establishing that the evidence compels the conclusion that the government was unwilling or unable to help him had he reported it, which he didn't. They've produced that, which doesn't meet their burden. They've also pointed to some very general articles and reports, background evidence indicating that this type of abuse does occur, that it's a problem, that reporting is a problem. But as the government noted in its brief, the background evidence equally indicated efforts from the local authorities, collaboration with the local authorities, to combat incidents of abuse, to increase the reporting of incidents of abuse. Again, the background evidence noted that corruption was a problem, but also that efforts had been made with respect to anti-corruption. Given that mix, he certainly didn't meet his burden below, but he definitely didn't meet his burden on review of establishing that the record compels the conclusion that the Honduran government was unwilling or able to control his half-siblings. Because that's positive of both the past persecution and future persecution claims, this Court should deny the petition on that basis alone. With respect to past persecution, in addition to the fact that he hasn't shown that the Honduran government is unable or unwilling to control his siblings, the record doesn't compel the conclusion that the incidents he described rise to the level of past persecution. While... What case do we look at for that? What's your best case? Your Honor, probably Navarani. That's cited in the government's brief. And in that case, this Court stated that even when there might be evidence that threats, which it's my understanding that they're arguing that the machete incident was an implied threat rather than an unsuccessful assault or fight, in that instance this Court stated that even if reasonable minds could differ as to whether or not that might rise to the level of past persecution, that certainly didn't indicate that the record compels such a finding. Again, in Lim and Canales-Vargas, this Court has stated that while threats alone can, in some circumstances, in very extreme cases constitute past persecution, in the vast majority of cases it's not. And it's more relevant... But counsel suggested there were beatings. Counsel did suggest that there were beatings. And again, while unfortunate, this level of past persecution... Persecution is an extreme concept. And their burden on review is to show that the evidence compels the conclusion that they met that level of extreme conduct. Is there a case which suggests, given the beatings that are in this record, that we don't arise to past persecution? Well, for example, the Navas case, which I believe is cited in both parties' briefs, in that instance we also had threats. But it was, in that case, the Court I believe used the language that here we have much more. We have threats in addition to family members having been murdered. It was a much more extreme case. And again, even if this Court, if it were reviewing the evidence de novo, might conclude that it rose to the level of past persecution, it doesn't compel that finding. So his past persecution claim fails on both of those bases. Because he didn't demonstrate past persecution on account of protected ground, he bore the burden of showing that he could not reasonably relocate to avoid his half-siblings. We're talking about on a protected ground, whether this is a group situation? Is that a social group? Is that what you're suggesting? He didn't show a social group? Yes, Your Honor. That's what the agency found. And again, the government noted that this was for several different reasons, and a number of which would be sufficient to sustain the agency's decision. But if the Court reaches the nexus question, the Petitioner has not established that the agency erred in finding that he failed to demonstrate a nexus to protected ground. First and foremost, it appears that the proposed group that he's arguing on review is distinct from the proposed group that he was arguing to the agency. And so the Court doesn't have jurisdiction to consider the claim because he failed to exhaust it or in the alternative because it wasn't the proposed group that was adjudicated by the agency. What was the group to the agency? The agency understood him to be arguing siblings, both before the IJ and before the Board. Siblings was the claim. This Petitioner actually presented a trial memo to the immigration judge outlining his proposed group, which was siblings. And although family-based, it was certainly a smaller subset within the family, and that is the claim that the agency adjudicated. The Board specifically said, for example, that his proposed group, and they defined it as full siblings within a larger family. So it's clear that the Board wasn't adjudicating nuclear family. Obviously, that would raise factual questions that weren't decided here, such as whether or not full-blood siblings within a larger extended family are a family or not. It simply wasn't. And the Board properly rejected the claim that was proposed to it, which was full siblings within a larger family, for failure to establish the social visibility criterion. There simply was insufficient evidence in the record as to how this group was perceived as a group within Honduran society. I know that the Petitioner has submitted, including recently, a Seventh Circuit decision concerning this criterion, and it's the government's position, which was the same position in the government's brief, that this Court has already adopted that criterion as part of the framework in ARTECA, and the Board has adopted it in a matter of CA, which this Court has already accorded deference to. So there are arguments as to whether or not it should or shouldn't be a criteria, I believe are foreclosed at this time, because the agency has applied that framework and this Court has applied that framework. Thank you. I don't have any questions. No. Thank you very much. Do I have a minute? Yeah, Your Honor. Just two quick points. First of all, Angel has consistently argued that his particular social group claim consists of him and his full siblings. That's been the only claim that's adjudicated since his first interview with an asylum officer. It's a claim that the IJ addressed. It's a claim that the BIA addressed. It's been completely exhausted. Second, I just wanted to respond to Judge Hawkins' question. There was no questioning on cross-examination about what other evidence might exist about the government nexus. And in fact, I think it's important to think about what type of evidence might have existed. Angel's chief persecutor was ten years older than he was. You know, it's, you know, I think not reasonable to assume that he would have known who the names of Hermon's friends in the local police force or the nature of the connection or the ranks of those people. These people, Hermon and his half-brother, were not close as evidenced by the persecution in the record. So I don't think there would have been anything more that Angel could have offered in this case. Thank you. Thank you. I would also like to say, Mr. Baird, we especially thank you for taking this case on pro bono. Thank you, Your Honor. It's been an honor. It's been part of our pro bono project. We appreciated that, and we appreciate all of those attorneys who do that, and I especially wanted to mention that. Thank you, Your Honor. Thank you very much. Thank you all for your argument this morning. Case 08-73530 has been, will be submitted.
judges: Goodwin, Hawkins, Smith N. R.